**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MAURICE FULSON; HENRY FORD,           )
                                      )
        Plaintiffs,                   )
                                      )        No. 22 C 1894 & 22 C 2064
        v.                            )
                                      )        Judge Sara L. Ellis
THOMAS DART, Sheriff of Cook County,  )
and COOK COUNTY, ILLINOIS             )
                                      )
        Defendants.                   )

**<u>OPINION AND ORDER</u>**

While housed in the Residential Treatment Unit ("RTU") at the Cook County Jail

because of certain medical conditions, Plaintiffs Maurice Fulson and Henry Ford contracted the

coronavirus. Plaintiffs have separately sued Defendants Thomas Dart, the Sheriff of Cook

County, Illinois, in both his official and individual capacities, and Cook County,[1] seeking

damages for injuries they sustained while detained. In nearly identical complaints, Plaintiffs

allege claims of unconstitutional conditions of confinement and shackling by excessive force in

violation of the Fourteenth Amendment. Dart now moves to dismiss Plaintiffs' complaints under

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiffs have sufficiently

pleaded enough facts to allege a plausible claim for unconstitutional conditions of confinement

and excessive force against Dart in his official capacity. However, because Plaintiffs have failed

to allege that Dart knew of the specific circumstances that allegedly give rise to their excessive

force claims, the Court dismisses Plaintiffs' claims against Dart in his individual capacity.

---

[1] Plaintiffs bring their claims against Cook County pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003), which clarified that "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." As such, the Court only addresses Dart going forward.

**BACKGROUND[2]**

Dart is the Sheriff of Cook County. Fulson and Ford were pretrial detainees at Cook County Jail during the relevant time period. Both Fulson and Ford suffer from diabetes and high blood pressure, and Fulson has only one kidney. Due to their medical conditions, Cook County Jail considered Fulson and Ford medically compromised and placed them in the RTU.

Since January of 2020, Dart knew that the coronavirus posed a high risk to the health and well-being of detainees at Cook County Jail. Despite this knowledge, Dart failed to provide the detainees with sufficient hygiene products, cleaning supplies, and proper personal protective equipment ("PPE"), including gowns, face-shields, gloves, and bleach; did not frequently clean or disinfect high-touch surfaces and objects; and did not implement social distancing strategies for detainees residing in the RTU.

By March of 2020, Cook County Jail likely had multiple cases of coronavirus, with several detainees assigned to the RTU exhibiting coronavirus symptoms. In April, Plaintiffs contracted the coronavirus and fell very ill. Cook County Jail transferred them to Stroger Hospital for treatment. Per Dart's instructions, both Fulson and Ford, like all other detainees hospitalized at outlying hospitals, were shackled by hand and foot to their hospital beds. The restraints caused Plaintiffs significant pain and limited their ability to position themselves in a way that would assist with their breathing and allow them to recover from symptoms of the coronavirus. Because the restraints prohibited Plaintiffs from using the restroom, they urinated and defecated on themselves.

---

[2] The Court takes the facts in the background section from Plaintiffs' complaints and presumes them to be true for the purpose of resolving Dart's motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.    Unconstitutional Conditions of Confinement Claim**

Dart argues that Plaintiffs have failed to allege facts to support their claims that they were subjected to unconstitutional conditions of confinement that led to them contracting the coronavirus. The Fourteenth Amendment governs claims by pretrial detainees regarding their conditions of confinement.[3] *See Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019). To state a claim, Plaintiffs must allege that Dart "acted purposefully, knowingly, or perhaps even recklessly" and that his conduct was objectively unreasonable. *McCann v. Ogle Cnty.*, 909 F.3d

---

[3] Because Plaintiffs only proceed against Dart in his official capacity on their conditions of confinement claims, their claims arise under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). In addition to pleading a constitutional violation, *Monell* requires Plaintiffs to establish that a policy or practice of Dart's office caused that violation, or that the violation was caused by a person with final policymaking authority. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Dart only focuses on whether Plaintiffs sufficiently pleaded a Fourteenth Amendment claim, and so the Court does not address the remaining elements of a *Monell* claim.

881, 886 (7th Cir. 2018) (citing *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018)).

Objective unreasonableness "turns on the facts and circumstances of each particular case."

*Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (citation omitted) (internal quotation marks

omitted). "When evaluating reasonableness, . . . courts must afford prison administrators wide-

ranging deference in the adoption and execution of policies and practices that in their judgment

are needed to preserve internal order and discipline and to maintain institutional security." *Mays

v. Dart*, 974 F.3d 810, 820 (7th Cir. 2020) (citing *Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir.

2020)) (internal quotation marks omitted).

Here, Dart does not seem to challenge whether Plaintiffs have sufficiently pleaded the

requirement of knowing conduct. In any event, Plaintiffs satisfy this requirement; they allege

that Dart knowingly failed to take reasonable steps to stop the spread of coronavirus at the Cook

County Jail. Dart instead focuses on whether Plaintiffs satisfied the objective unreasonableness

requirement, arguing that he took unprecedented measures to address the spread of coronavirus.

In support, Dart points to the Seventh Circuit's ruling in *Mays v. Dart*, another case challenging

coronavirus prevention measures at the Cook County Jail. *Id.* But, as other courts in this district

have concluded with respect to nearly identical claims, *Mays* does not conclusively establish the

objective reasonableness of Dart's actions. *See Albarran v. Dart*, No. 21 C 1024, 2022 WL

1556103, at *3 (N.D. Ill. May 17, 2022) (concluding that *Mays* did not require dismissal of

unconstitutional conditions of confinement claims against Dart and collecting cases); *Brown v.

Dart*, No. 20-CV-4193, 2021 WL 4401492, at *3 (N.D. Ill. Sept. 25, 2021) (explaining that

"[t]he *Mays* cases neither indisputably nor definitively establish that [Dart's] response to the

coronavirus was objectively reasonable" (citation omitted) (internal quotation mark omitted));

*Cullom v. Dart*, No. 20 C 4034, 2020 WL 7698366, at *2 (N.D. Ill. Dec. 27, 2020) (rejecting

4

defendants' contention that *Mays* precludes claims against Dart regarding his response to the coronavirus); *Gama v. Dart*, No. 20 C 3449, 2020 WL 6802030, at *3 (N.D. Ill. Nov. 19, 2020) (rejecting Dart's reliance on the district court's findings in *Mays*). Although the Seventh Circuit noted that Dart "took numerous proactive measures to prevent the spread of COVID-19," it emphasized that it was "not address[ing] the merits of whether Plaintiffs have demonstrated that they have suffered a constitutional violation" and instead only considered potential legal errors the district court committed in evaluating whether to grant a preliminary injunction. *Mays*, 974 F.3d at 815, 822. Thus, *Mays* does not definitively establish that Dart's response to the coronavirus cannot meet the objective unreasonableness standard. *See MacDonald v. Chicago Park Dist.*, 132 F.3d 355, 357–58 (7th Cir. 1997) (a decision on a preliminary injunction "is not a decision on the merits of the plaintiff's suit" (quoting *Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir. 1997))); *Cullom*, 2020 WL 7698366, at *2 (refusing to give *Mays* preclusive effect because it involved a ruling on a preliminary injunction request).

Dart also argues that Plaintiffs' allegations are not plausible. In their complaints, Plaintiffs allege that Dart failed to take reasonable steps to stem the spread of the coronavirus by failing to provide adequate PPE and sufficient hygiene and cleaning supplies, adequately sanitize common areas, and implement social distancing strategies. Rather than explaining why these allegations fail to meet the plausibility standard, Dart highlights various steps he took to stem the spread of the coronavirus at the Cook County Jail that purportedly contradict Plaintiffs' allegations. But this is a question for a later stage; on a motion to dismiss, the Court must take the facts as alleged in the complaints and draw all inferences in Plaintiffs' favor, without considering Dart's counter-facts. *See Brown*, 2021 WL 4401492, at *4 (refusing to consider defendants' arguments that they "took a more aggressive approach to COVID-19 prevention"

because "any counter-facts or affirmative defenses pose questions for a later stage" (internal

quotation marks omitted)); *Cullom*, 2020 WL 7698366, at *2 ("[D]efendants also cite in support

of dismissal the efforts that [Dart] undertook to address the coronavirus outbreak . . . . The

problem with this argument is that it relies on claimed facts that are not contained in the

complaint."). Although Plaintiffs may not ultimately be able to prove their claims, at this stage,

Plaintiffs have sufficiently alleged that Dart's actions were "insufficient to protect the medically

vulnerable," including Plaintiffs, whose medical conditions created a higher risk of contracting

the coronavirus. *Gama*, 2020 WL 6802030, at *3; *see also Cullom*, 2020 WL 7698366, at *3

(allowing plaintiff to proceed on conditions of confinement claim against Dart in his official

capacity concerning coronavirus prevention measures at the Cook County Jail).

## II. Shackling Claim

Dart next challenges Plaintiffs' claim that the Cook County Jail's restraint policy violates

the Fourteenth Amendment.[4] The Due Process Clause prohibits the use of bodily restraints in a

way that serves to punish a pretrial detainee. *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000).

"The use of bodily restraints constitutes punishment . . . if their use is not rationally related to a

legitimate non-punitive government purpose or they appear excessive in relation to the purpose

they allegedly serve." *Id.* (citation omitted).

Plaintiffs agree that shackling advances a valid non-punitive governmental purpose. *See*

*Hart v. Sheahan*, 396 F.3d 887, 893 (7th Cir. 2005) ("[T]he detention facility has an interest in

. . . preventing escapes."); *May*, 226 F.3d at 884 ("Certainly, shackling all hospital detainees

reduces the risk of a breach of security and thus furthers a legitimate non-punitive government

purpose."). But they argue that the application of the shackling policy in their cases was

---

[4] Although Dart analyzes the shackling claim under both the Fourth and Fourteenth Amendments,
Plaintiffs' response addresses only the Fourteenth Amendment.

excessive in relation to its escape-prevention purpose. *See May*, 226 F.3d at 884 (finding that

policy of continuously shackling an AIDS patient to a bed while under the constant watch of a

guard was "plainly excessive in the absence of any indication that the detainee pose[d] some sort

of security risk"). Plaintiffs allege that Stroger Hospital treated them for severe cases of

coronavirus; Fulson had difficulty breathing and felt significant pain, and Ford was placed on a

respirator. Plaintiffs further allege that armed guards constantly monitor the wing on which most

detainees reside at Stroger Hospital. In their response, Plaintiffs clarify that they themselves

were guarded continuously by correctional officers.[5] They also allege that the continuous

restraint of their hands and feet caused significant pain and limited their ability to position

themselves, preventing them from breathing more easily. Although Dart argues that Plaintiffs

offer only conclusory allegations that they did not pose a security risk and attempts to distinguish

this case from *May*, the Court finds Plaintiffs' allegations that they had difficulty breathing and

were ill and weak because of the coronavirus, coupled with their assertions that armed guards

monitored them, sufficient to suggest that the application of the shackling policy was excessive

as to Plaintiffs. *See Brown*, 2021 WL 4401492, at *4 (finding "the allegations that Brown was

suffering from coronavirus, was having difficulty breathing, and had previous chronic medical

conditions that limited his mobility" sufficient to infer that he was not a security risk and did not

require shackling, even though he did not "specifically allege that he was 'shackled to his bed 24

hours-a-day or that an armed guard was present 24 hours-a-day'" (citing *May*, 226 F.3d at 884));

*Gama*, 2020 WL 6802030, at *4 (finding plaintiff's contentions in his response to Dart's motion

to dismiss "that he had difficulty breathing and that he was very weak . . . sufficient to infer that

---

[5] Plaintiffs may add factual allegations in response to a motion to dismiss so long as those allegations are consistent with facts already alleged in the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Here, the assertion that armed guards monitored Plaintiffs is consistent with Plaintiffs' allegation that most detainees reside in a specific wing of Stroger Hospital constantly monitored by armed guards.

he was not a security risk and did not require shackling"). And because Plaintiffs have alleged "that the shackling took place, and thus the violation of [their] constitutional rights was caused," because of a common Sheriff's Office policy and practice, they may proceed on their claim against Dart in his official capacity under *Monell*. *Cullom*, 2020 WL 7698366, at \*4.

However, Plaintiffs have not sufficiently alleged Dart's liability in his individual capacity. "It is well established that [f]or constitutional violations under § 1983 . . . a government official is only liable for his or her own misconduct." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (alteration in original) (citation omitted) (internal quotation marks omitted); *see also Brown*, 2021 WL 4401492, at \*4 ("Individual liability under Section 1983 requires a defendant's personal involvement in the alleged constitutional violation." (citing *Perez*, 792 F.3d at 781)). Because "the policy [of shackling detainees] is not inherently unconstitutional, . . . to hold Dart liable for how it was applied to plaintiff[s] requires allegations that Dart personally participated in that application." *Gama*, 2020 WL 6802030, at \*4. Although Plaintiffs allege that Dart knew of the practice of shackling seriously ill inmates, they have failed to plausibly allege that Dart knew of Plaintiffs' particular circumstances. *See id.* (dismissing nearly identical individual-capacity claim against Dart where plaintiff alleged only that Dart "was aware of the widespread policy of shackling detainees while at the hospital"); *see also Brown*, 2021 WL 4401492, at \*4 ("Brown has not plausibly alleged that Dart was aware of any of his particular conditions, and therefore has failed to state a claim against Dart in his individual capacity."). The Court therefore dismisses Plaintiffs' individual-capacity claims against Dart. *See Cullom*, 2020 WL 7698366, at \*4 (dismissing plaintiff's individual-capacity

8

shackling claim against Dart where his complaint did not allege that Dart was aware of the plaintiff's particular circumstances).[6]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Dart's motions to dismiss Plaintiffs' complaints [No. 22-1894, Doc. 20; No. 22-2064, Doc. 15]. The Court dismisses the shackling claim against Dart in his individual capacity.

Dated: January 3, 2023

_____
SARA L. ELLIS
United States District Judge

---

[6] Because Plaintiffs fail to state a claim against Dart in his individual capacity, the Court need not consider whether qualified immunity would otherwise bar the claim.